**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3054-21

PETER C. GEARY,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

LAINIE F. GEARY,

      Defendant-Respondent/
      Cross-Appellant.

_____

Submitted November 13, 2023 – Decided February 21, 2024

Before Judges Berdote Byrne and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0911-13

DeTommaso Law Group, LLC, attorneys for appellant/cross-respondent (Joseph M. Freda, III, of counsel and on the briefs).

Lawrence Law, LLC, attorneys for respondent/cross-appellant (Jeralyn L. Lawrence and Kristyl M. Berckes, on the briefs).

PER CURIAM

This post-judgment matrimonial matter involves the modification of limited duration alimony. After holding a multi-day plenary hearing, the Family Part entered an order on May 27, 2022, granting and denying relief in various respects. Plaintiff Peter Geary appeals the provisions of the order that establish the temporary modification of alimony, calculate the temporary modification, impute income, permit defendant to file a motion to extend limited duration alimony, and determine arrearages. Defendant Lainie Geary cross-appeals, challenging the setting of arrearages and denying her request for attorneys' fees. Having reviewed the record, we conclude the trial court findings are supported by substantial, credible evidence and the trial court correctly applied the governing principles, therefore, we affirm.

I.

We summarize the facts from the plenary hearing. Both parties were represented by counsel during the proceedings. The parties were the only witnesses called to testify at the hearing.

The parties were married on July 31, 1993 and share two children. In June 2014, the parties divorced, and a Marital Settlement Agreement (MSA) was incorporated into their Dual Final Judgment of Divorce (DFJD). Article 6 of

the MSA governs alimony. Paragraph 6.2(A) provides plaintiff "shall pay . . . defendant limited duration alimony commencing May 1, 2014, through December 31, 2030, in the amount of $120,000 per year or $10,000 per month."

Under Paragraph 6.2(C), the parties agreed defendant has a claim for arrearages in the event plaintiff failed to advise her that his income had returned to $325,000 or greater. The paragraph further reads, "[o]therwise, unless specifically noted within this Article herein, [defendant] shall not have a claim for any arrearages of any sort or kind for periods wherein her alimony [] was reduced."

Pursuant to Paragraph 6.2(E), in the event plaintiff failed to advise defendant of the change, defendant "shall have a claim for arrearages if [plaintiff] fails to advise her that his income returned to $300,000 or greater, in which case she [would be] entitled to alimony at the rate set forth in sub-paragraph (A) or (B) from the time his income returned to $300,000 or greater." This provision also stated defendant did not have a claim for any arrearages of any sort for periods her alimony [] was reduced, unless specifically stated in the agreement.

Paragraph 6.2(F) states defendant's earnings or potential earnings would not be considered unless her gross earnings reach $100,000 or defendant's

3

income falls below $300,000. This paragraph also triggers an automatic review of plaintiff's alimony obligation if defendant's income rises above $100,000 per year, "specifically to review a downward modification of [plaintiff]'s alimony obligations depending on [plaintiff's] income at the time the parties utilizing mediation as the first means of resolving any disputes."

During the marriage, plaintiff was employed as a managing director of an advertising agency in New York, earning approximately $325,000 per year. Plaintiff stated that due to corporate restructuring, he was terminated from employment in September 2019 and received severance payments through December 2019.

Defendant earned approximately $55,000 per year at the time of the divorce. In 2019, she earned $102,185.50 and $111,464.90 in 2020. At the time of the hearing, defendant testified that she earned $97,000 as a part-time office manager at a law firm and sold advertising part-time for a legal publication.

While plaintiff searched for other employment, he paid defendant $5,000 per month in alimony from January through April of 2020, based on the parties' voluntary agreement. In May 2020, the parties agreed to a further reduction of

$4,000 for the month, which plaintiff certified came from his $4,186.00 monthly unemployment benefits.

At the hearing, plaintiff testified, despite a diligent job search throughout the United States, he was unable to obtain employment in advertising and the related fields of marketing, media, and sales. He also claimed his job search was impacted by COVID-19. In support of his motion, plaintiff submitted a spreadsheet purporting to show 1,000 entries detailing his job search.

Within five months of his last severance payment, plaintiff notified defendant that he was relocating to reduce expenses since the job search did not yield results and he could no longer pay alimony. Beginning in June, plaintiff made a single $1,000 alimony payment to defendant.

Plaintiff relocated to Hilton Head, South Carolina and decided to become a realtor. After becoming licensed, plaintiff established an LLC, created a website, and began promoting his business on social media platforms, but he never began work as a realtor and had not obtained other employment since his relocation.

In accordance with the terms of the MSA, the parties first attempted to resolve their alimony dispute through mediation. When mediation proved fruitless, in June 2020, defendant requested the court impute income of

$325,000 to plaintiff and return plaintiff's alimony obligation to $120,000 per year in accordance with Paragraph 6.2(A). In response, plaintiff cross-moved in July 2020, seeking to reduce his obligation to $1,000 per month, citing a change in financial circumstances based on his unemployment.

On September 18, 2020, the Family Part court entered an order finding that plaintiff had "established a prima facie case of changed circumstances for termination/modification of his alimony" and would continue to pay annual alimony of $100,000, or $8,333 per month, subject to reallocation pursuant to Paragraph 6.2(D). A plenary hearing was also ordered.

A plenary hearing was held over the course of six, nonconsecutive days on September 21, 22, 23, 29, 2021, and October 5 and 7, 2021. On May 27, 2022, the court issued an order accompanied by a cogent oral opinion. The court analyzed the factors set forth in N.J.S.A. 2A:34-23k and incorporated them in its analysis. It determined plaintiff had "effectively" proven a prima facie case of changed circumstances, "but only for a temporary modification of alimony" under N.J.S.A. 2A:34-23k(9). In making its findings, the court focused on the factors articulated in Lepis v. Lepis: (1) an increase in the cost of living; (2) increase or decrease in the supporting spouse's income; (3) illness, disability or infirmity arising after the original judgment; (4) the dependent

spouse's loss of a house or apartment, (5) the dependent spouse's cohabitation with another; (6) subsequent employment by the dependent spouse, and changes in the federal income tax law. 83 N.J. 139, 151 (1980) (internal citations omitted).

In applying the factors to the evidence adduced at the hearing, the court found both parties decreased their living expenses. Plaintiff sold his home in New Jersey and relocated to South Carolina. Concerning factor two, plaintiff had been unemployed since 2019 and, when his severance concluded, he emailed plaintiff that he was pursuing a realtor's license in South Carolina. As to factor three, neither party suffered an illness, disability, or infirmity arising after the original judgment. Regarding factor four, defendant voluntarily sold the martial home in Westfield and purchased a smaller townhome in Basking Ridge. While plaintiff asserted defendant cohabitated with her boyfriend, he did not formally assert a cohabitation claim; and therefore, the court did not consider and did not find any cohabitation.

As to factor six, the court found defendant continued to work for a legal journal and began working part time at her mother's law firm. The court further noted defendant was unlikely to earn over $100,000 in the future because defendant's mother would be retiring. The court iterated plaintiff's involuntary

7

termination and plaintiff's job search. The court also considered plaintiff attempted to start a real estate career in South Carolina, and plaintiff did not have a "stable income" at the time of the plenary hearing. Based on those findings, plaintiff's alimony obligation was temporarily modified to $100,000 per year, from June 25, 2020, the filing date of plaintiff's motion, to September 21, 2021, the commencement of the plenary hearing, and plaintiff was directed to make retroactive payments of $8,333 per month.

Pursuant to Caplan v. Caplan, 182 N.J. 250, 268 (2005), the court imputed income to plaintiff in the amount of $180,000 per year as a realtor in South Carolina, commencing September 21, 2021. The court noted plaintiff had passed the real estate exam but had not worked since he relocated to South Carolina. The court reasoned "given [plaintiff's] acceptance as a realtor in Hilton Head and the thriving real estate market during the pandemic . . . [p]laintiff certainly could have earned a substantial salary as a realtor in Hilton Head by the time he testified after moving two years ago to South Carolina," taking judicial notice under N.J.R.E. 801(c)17 of South Carolina market reports and other commercial publications concerning the South Carolina real estate market. Similarly, the court took judicial notice of and considered the average

salary of Hilton Head real estate agents, imputing income to plaintiff in the amount of $180,000 per year commencing in September 2021.

The court, however, modified plaintiff's alimony obligation to $60,000 per year, or $5,000 per month, for 2021 and 2022. The court also continued plaintiff's modified alimony obligation while plaintiff "builds his career," until "the limited duration of December 31, 2030," unless he resumes a salary of $300,000 or greater.

Noting in paragraph 6.2(G) that plaintiff agreed to "use his best efforts to maintain an income of at least $325,000 in his present and future endeavors in order to meet his maximum obligations," the court ordered plaintiff to "continue to seek meaningful employment and use his best efforts." The court found plaintiff not "wholly believable and plausible." That finding was based on the court's conclusion that plaintiff's job search efforts were not "entirely sufficient" because "he could have continued to seek advertising jobs even from Hilton Head but did not do so." The documentation submitted to show plaintiff's job search was "more evidence for New York unemployment rather than genuine and specific job searches." The court pointed out plaintiff (1) "never appeared" to follow up on applications; (2) applied to jobs on various internet recruiting sites by just submitting his resume and "did not have the

9

proper experience or an MBA," and (3) "did not follow up with advertising agencies, nor provided [the documents] to the court."

The court further ordered that in the event plaintiff earns $325,000, "at or near the end of the limited term of alimony, the duration may extend upon motion by defendant with all financials provided." The order also directed the parties to exchange their respective tax returns each year until 2035, five years after the expiration of the limited duration alimony. As to arrears, beginning June 1, 2022, plaintiff was directed to pay $36,000 or $1,000 per month, for thirty-six months. Finally, the court denied both parties' requests for counsel fees.

II.

On appeal, plaintiff challenges the order on several grounds. He argues the Family Part judge erred by: (1) failing to analyze the factors under N.J.S.A. 2A:34-23 after he demonstrated a substantial change in circumstances; (2) using a mathematical formula to set alimony; (3) requiring his obligation return to the level dictated by the MSA if his salary equaled or exceeded $300,000; (4) ordering the parties to exchange their tax returns each year until 2035; (5) allowing for the extension of the limited duration alimony period upon future motion; and (6) ordering him to pay alimony arrears in the amount of $36,000.

On cross-appeal, defendant argues the judge erred in awarding $36,000 in alimony arrears, and denying defendant's request for counsel's fees.

We reject the parties' arguments because they are not supported by the record and the controlling law.

III.

Our review of a Family Part order is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "We accord deference to Family Part judges due to their 'special jurisdiction and expertise in family [law] matters.'" Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019) (alteration in original) (quoting Cesare, 154 N.J. 394, 413 (1998)). A court's findings "are binding on appeal so long as their determinations are 'supported by adequate, substantial, credible evidence.'" Id. at 442. Deference is especially appropriate where evidence is testimonial and involves credibility determinations because the observing court "has a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988). Generally, a Family Part court's finding regarding the modification of alimony "should not be vacated unless the court clearly abused its discretion, failed to consider all of the controlling legal principles, made mistaken findings, or reached a conclusion that could not reasonably have been reached on sufficient

11

credible evidence present in the record." J.E.V. v. K.V., 426 N.J. Super. 475, 485 (App. Div. 2012). However, while "a family court's factual findings are entitled to considerable deference, we do not pay special deference to its interpretation of the law." Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016) (quoting D.W. v. R.W., 212 N.J. 232, 254 (2012)).

A.    Modification of Alimony

An alimony order establishes the present support obligations of the former spouses and is "always subject to review and modification on a showing of 'changed circumstances.'" Crews v. Crews, 164 N.J. 11, 28 (2000) (quoting Lepis, 83 N.J. at 146). Pursuant to N.J.S.A. 2A:34-23, an alimony order "may be revised and altered by the court from time to time as circumstances may require." See Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020). When a party moves for a reduction in alimony, the Family Part court engages in a two-step inquiry. Crews, 164 N.J at 28. First, the court must determine whether the moving party has made a prima facie showing of changed circumstances. R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014). "Changed circumstances such as . . . employment, . . . may result in a modification of support." Miller v. Miller, 160 N.J. 408, 420 (1999). Thus, the moving party must demonstrate a change in circumstances from those existing when the prior

support award was fixed. Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990); see also Donnelly v. Donnelly, 405 N.J. Super. 117, 127-29 (App. Div. 2009).

Next, the court must determine whether the party seeking modification has demonstrated changed circumstances…"have substantially impaired the [movant's] ability to support himself . . . ." Crews, 164 N.J. at 28 (quoting Lepis, 83 N.J. at 157).

The trial court found plaintiff established a change in circumstances allowing a modification of his alimony obligation. The court nonetheless found that only a temporary modification of alimony was warranted because "plaintiff [was] certainly capable of earning a substantial income as a realtor in Hilton Head."

We reject plaintiff's claim that the court failed to address the statutory factors set forth in N.J.S.A. 2A:34-23b. Plaintiff misapprehends the statute the court was required to consider when reviewing an application to modify alimony. On an initial award of alimony, the court is required to consider the thirteen factors in N.J.S.A. 2A:34-23b. Prior to rendering findings of fact in this matter, the court expressly stated it considered and determined plaintiff's application based on the enumerated factors in N.J.S.A. 2A:34-23k and

incorporated them in its analysis. Having reviewed the forty-four-page transcript, we are satisfied the trial court's findings are based on substantial, credible evidence and the correct statutory factors were applied.

We reject plaintiff's argument that the court "wholly disregarded" N.J.S.A. 2A:34-23b by "utilizing a mathematical formula to establish spousal support." We likewise reject plaintiff claims the court improperly imputed income to him.

"If a court is satisfied that a party is not earning at his or her capacity it then can impute income if, as already noted, it finds voluntary underemployment without just cause." Gormley, 462 N.J. Super. at 448.

The court is required to review whether defendant's income reduction is "'reasonable' under the circumstances." Storey v. Storey, 373 N.J. Super 464, 468 (App. Div. 2004). Imputation of income, incapable of exactness, requires a "trial [court] to realistically appraise capacity to earn and job availability." Id. at 474 (citing Tash v. Tash, 353 N.J. Super. 94, 99 (App.Div.2002)). Therefore, a trial judge's imputation of a specific amount of income "will not be overturned unless the underlying findings are inconsistent with or unsupported by competent evidence." Id. at 474-75.

Here, the trial court made findings concerning plaintiff's job search and his lack of stable income since he relocated to South Carolina. The court's

14

findings that plaintiff could make a suitable living as real estate agent in Hilton Head are all based on sufficient, credible evidence in the record. Therefore, we are satisfied the trial court appropriately imputed income to plaintiff.

We disagree with plaintiff's argument that the court "improperly" used a mathematical formula to determine his alimony obligation. The court explained the plaintiff's alimony obligation of $60,000 per year in 2021 and 2022 was "33.3 percent of [$180,000] imputed to him as a realtor in South Carolina." The court then noted the MSA provided for $120,000 per year in limited durational alimony which was "36.9 percent of his income for purposes of the [MSA.]" Based on the sufficient credible evidence in the record, we discern no factual or legal basis to conclude the court abused its discretionary authority by utilizing the same percentages as those utilized when his income was established in the MSA.

We are not convinced by plaintiff's remaining arguments that the court's findings as to defendant's income were contrary to defendant's testimony and constituted reversible error. In finding defendant's income was an "isolated event," the trial court's findings are supported by credible evidence in the record. Nor does any consideration of defendant's income alter plaintiff's downward

modification of alimony. Again, we discern no error in the court's consideration of evidence as applied to the law.

B. Limited Duration Alimony

Plaintiff argues the court committed reversible error by extending his limited duration alimony obligation contrary to the MSA. Contrary to plaintiff's argument, the court rejected defendant's request to extend the term of alimony to pay back the arrears. The court enforced Paragraph 6.4 of the MSA providing the length of the limited duration alimony "should not be modified, or otherwise subject to reduction." Consistent with the MSA and N.J.S.A. 2A:34-23(c), the court did not preclude defendant from making an application later to modify alimony based on an increase in plaintiff's income. We are satisfied the court's findings and order comports with the statute and the MSA. See N.J.S.A. 2A:34-23(c); Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340 (App. Div. 2009). We discern no abuse of discretion with the court's analysis or in its order because a modification of a limited duration alimony term will be dependent on a future application and an analysis of the facts at that time.

C. Arrearages

A trial court "possesses broad equitable powers to accomplish substantial justice" and may tailor an appropriate remedy for violation of its orders. Finger

16

v. Zenn, 335 N.J. Super. 438, 446 (App. Div. 2000). Indeed, pursuant to Rule 5:3-7(b), a Family Part court is entitled to use various remedies to enforce a judgment or order concerning alimony after finding a violation of same, including "fixing the amount of arrearages," imposing "economic sanctions," and "any other appropriate equitable remedy." R. 5:3-7(b)(1), (4) and (8).

Defendant now argues that the court erred in awarding $36,000 in arrearages by failing to consider the effective date of its decision and calculating plaintiff's arrears from the last day of the plenary hearing, October 7, 2021, to the date of the court's decision, May 27, 2022. We disagree. At the September 2020 hearing on plaintiff's motion, plaintiff requested that arrears "be effective as of the filing date of [her] motion" because plaintiff had not paid alimony from January through July 2020. Following defendant's undisputed testimony at the plenary hearing on the issue of the $36,000 in arrears, the trial court properly awarded arrears based on plaintiff's failure to comply with the September order. We are also satisfied the trial court correctly found that under Paragraph 6.2(C) or (E), defendant is precluded from claiming arrearages from the last day of the plenary because the MSA does not provide for such award.

D.    Attorneys' fees

Defendant challenges the denial of her request for attorneys' fees, asserting the court failed to conduct an analysis of plaintiff's counsel's affidavit of services or the reasonableness of his fees and failed to consider plaintiff's superior financial circumstances, plaintiff's ability to pay, and plaintiff's bad faith.  We disagree.

Counsel fee determinations "rest[] in the sound discretion of the trial court."  Bisbing v. Bisbing, 468 N.J. Super. 112, 121 (App. Div. 2021) (citing Williams v. Williams, 59 N.J. 229, 233 (1971)).  We "will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion."  Slutsky v. Slutsky, 451 N.J. Super. 332, 365 (App. Div. 2017) (quoting Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008)).

Governed by these principles, we perceive no reason to disturb the May 27, 2022 order.  The court properly considered Rule 5:3-5(c) factors and results of the plenary hearing.  We agree with the court that it "[did] not find that either party [was] more entitled to counsel fees than the other." Therefore, we discern no abuse of discretion in the trial court's denial of the award of fees.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3054-21